UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

DEXTER ROGERS, Individually and as )
Personal Representative of the )
ESTATE OF CARRIE BELL ROGERS )
and as Personal Representative of the )
ESTATE OF PREMIUS ROGERS, )
                                                            )
      Plaintiff, )
                                                            )
     v. )    CAUSE NO.: 1:16-CV-364-TLS
                                                            )
INDIANA SUPREME COURT *et al.*, )
                                                            )
      Defendants. )

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [ECF No. 31], filed by the Defendants Hon. Stephen H. David, Hon. Mark Massa, Hon. Robert D. Rucker, Hon. Loretta H. Rush, Hon. Geoffrey G. Slaughter and the Indiana Supreme Court (collectively "the Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). The pro se Plaintiff, Dexter Rogers, Individually and as Personal Representative of the Estate of Carrie Bell Rogers, and as Personal Representative of the Estate of Premius Rogers, filed the Complaint [ECF No. 1] against the Defendants on October 17, 2016, in relation to a medical malpractice case in the Allen Superior Court. Also before the Court is the Plaintiff's Motion for a Hearing [ECF No. 51]. The Court will consider this Motion in conjunction with the Defendants' Motion to Dismiss.

For the reasons stated in this Opinion and Order, the Court finds that the Plaintiff's claims against the Defendants are barred under the *Rooker-Feldman* doctrine, the Defendants are entitled to immunity, and the issues presented by the Plaintiff pose considerations making abstention appropriate. Accordingly, the Motion to Dismiss is granted, and the Plaintiff's pending Motions are termed as moot.

## STANDARD OF REVIEW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se complaints are to be liberally construed and are held to a less stringent standard than pleadings drafted by lawyers, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013), and a court may also consider facts alleged in a pro se plaintiff's brief in opposition to a motion to dismiss when considering the sufficiency of the complaint (if the facts are "consistent with the allegations in the complaint"), *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015), the factual allegations in the complaint must nevertheless be enough to raise a right to relief above a speculative level, *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Adams*, 742 F.3d at 728 (internal citations omitted).

## COMPLAINT ALLEGATIONS

The Plaintiff's mother, Carrie Bell Rogers, was a patient at Parkview Hospital, Inc. ("Parkview") (formerly a defendant in this proceeding), and died on August 23, 2011. (Comp. ¶ 9; ECF No. 1.) The Plaintiff filed a claim with the Indiana Department of Insurance, as required by Indiana's Medical Malpractice Act, on June 25, 2013. (*Id.* ¶ 10.) The Plaintiff claims that Parkview was negligent in its care of his mother, resulting in her death. The Plaintiff also alleges

that Parkview violated Title VI when Parkview allegedly denied care and treatment to his mother while she was a patient of the hospital. The Plaintiff alleges that the care his mother received was inferior to the care that white patients in similar circumstances received. (*Id.*)

A discovery dispute arose between the Plaintiff and Parkview in the state court proceedings, which led the Plaintiff to file a motion to compel. (*Id.* ¶ 10–12.) The Allen County Superior Court granted the Plaintiff's motion and ordered Parkview to produce certain documents and make available its CEO, Michael Packnett, for a discovery deposition. (*Id.* Ex. A 88–89.) Parkview did not produce its CEO, incurred sanctions, and then appealed the Allen County Superior Court's decision to the Indiana Court of Appeals. (*Id.* ¶ 13.)

The Indiana Court of Appeals reversed the Allen Superior Court's decision and found that the Plaintiff's requested discovery deposition was outside the scope of Indiana Trial Rule 26.[1] (*Id.*) The Plaintiff claims that Parkview failed to justify its refusal to produce its CEO for a deposition. The Plaintiff also claims that the Court of Appeal's decision was erroneous and violated his due process rights. (*Id.* ¶ 34.)

The Plaintiff then filed a petition to transfer, which the Indiana Supreme Court denied. (*Id.* ¶¶ 13, 34.) The Plaintiff alleges that the Indiana Supreme Court should have granted his petition to transfer, and that its failure to do so violated the Plaintiff's due process rights. (*Id.* ¶ 34.) After the Indiana Supreme Court denied the transfer, counsel for Parkview contacted John Whiteleather, Jr. (also a former defendant in this proceeding), whom the parties had selected as chairman of the medical review panel that was to review the Plaintiff's claim, and asked him to set a schedule for evidentiary submissions to the medical review panel. (*Id.* ¶ 46.) The Plaintiff claims he was not ready to proceed to the panel based on the Court of Appeals'

---

[1] The Plaintiff has also filed a suit against various judges of the Allen County Superior Court and Parkview Hospital, Inc. That case was dismissed on March 27, 2017 (1:16-CV-40-TLS-SLC).

decision holding that the Plaintiff was not entitled to the discovery he sought. (*Id.* ¶¶ 48–49.) The Plaintiff claims that Whiteleather attempted to move the panel proceedings forward because the Plaintiff is African-American and Parkview's counsel in the state court proceedings is white. (*Id.* ¶ 49.)

The Plaintiff asks the Court to issue a judgment declaring that the acts of the Defendants were unlawful and unconstitutional, award him damages, restrain the Defendants from violating the Plaintiff's constitutional rights, and issue a preliminary injunction. (*Id.* 21.)

## ANALYSIS

The Defendants assert that they are entitled to dismissal because: (1) the Plaintiff's claims are barred under the *Rooker-Feldman* doctrine (2) the Defendants are absolutely immune from suit and (3) the *Younger* doctrine requires that this Court abstain from deciding the Plaintiff's request for declaratory and injunctive relief. If the Court proceeds into an analysis of whether the Plaintiff's allegations state a claim pursuant to 42 U.S.C. § 1983 and/or 42 U.S.C. § 2000d, the Defendants argue that: (1) the Defendants are not "persons" subject to suit under § 1983 and are thus entitled to Eleventh Amendment immunity and (2) the Plaintiff has failed to state a claim under the Civil Rights Act of 1964. The Court has addressed these arguments below.

### A.  *Rooker-Feldman* Doctrine

The Defendants argue that the Plaintiff's claims are barred by the *Rooker-Feldman* Doctrine. Under the doctrine, this Court does not have jurisdiction to review or reverse orders issued in state court or state administrative proceedings. See *Gilbert v. Ill. Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010); *Lewis v. Anderson*, 308 F.3d 768, 771–72 (7th Cir. 2002). In essence, the *Rooker-Feldman* doctrine "prevents a state-court loser from bringing suit in federal court in

4

order to effectively set aside the state-court judgment." Gilbert, 591 F.3d at 900. The doctrine applies "even though the state court judgment might be erroneous or even unconstitutional." *Id.* "[A] plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993). A federal court is free to entertain claims that are independent of any state court proceedings. *Gilbert*, 591 F.3d at 900.

The Defendants argue that the Plaintiff's only claims against them concern the denial of his petition to transfer. The Plaintiff asserts this Court has jurisdiction by generally invoking Article III of the Constitution. When "the injury is executed through court order, there is no conceivable way to redress the wrong without overturning the order of the state court." *Sykes v. Cook County Circuit Court Probate Division*, 837 F.3d 736, 2016 WL 4784034 at 5* (7th Cir. 2016). "*Rooker- Feldman* does not permit such an outcome." *Id.* The Court cannot discern any independent claims from the Plaintiff's Complaint—at least not any that give fair notice of what the claim is and the grounds upon which it rests—that would provide a jurisdictional basis independent of the Plaintiff seeking redress for denial of his order to transfer in the state court proceedings.

Accordingly, the Court does not have subject matter jurisdiction to consider the Plaintiff's claims.

**B.     Judicial Immunity**

*1.     The Justices*

The Defendants argue that even if the *Rooker-Feldman* doctrine does not apply, they are immune from suit because they are judicial officers and the Plaintiff's suit concerns actions taken by the Defendants in their judicial capacity. Judicial officers are "not liable to civil actions for

5

their judicial acts, even when such acts are in excess of their jurisdictions, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). "The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993). "[J]udicial immunity is not overcome by allegations of bad faith or malice . . .", *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted), nor is immunity defeated by allegations that the judge conspired with non-immune persons, *Pena v. Mattox*, 84 F.3d 894, 897 (7th Cir. 1996). Moreover, judicial immunity includes protection from Title VI actions. *McKnight v. Middleton*, 669 F. Supp. 2d 507, 528 n 5 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x. 32 (2d Cir. 2011); *see also Williams v. Mannlein*, 637 F.App'x 221, 221 (7th Cir. 2016) (acknowledging that the district court dismissed a Title VI suit against the state court judge "reason[ing] that the judge had absolute immunity"). However, judicial immunity can be defeated where the judge's acts were not taken in the judge's judicial capacity or were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11–12.

To aid in the determination of whether a particular act or omission is entitled to judicial immunity, the Seventh Circuit has articulated the following factors to analyze: (1) the expectations of the parties, i.e., whether the parties dealt with the judge as judge; (2) whether the act is normally performed by a judge; and (3) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act "which might as well have been committed to a private person as to a judge." *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005) (citation omitted).

First, the Plaintiff himself agrees that the alleged violations of his rights occurred within the purview of the judicial function (Pl.'s Resp. Br. 4; ECF No. 44) ("When the Indiana Supreme Court upheld the Court of Appeals making up fictitious [o]rders of the [c]ourt to rely upon in rendering their February 29, 2016 opinion it equates to extreme abuse of judicial discretion."); *see also Stump*, 435 U.S. at 360 (holding a judge immune from suit when "Respondents themselves stated in their pleadings before the District Court that Judge Stump was . . . [,] at the time he approved the petition[,] acting as a county circuit court justice.").) Thus, the expectation of the Plaintiff indicates that he understood and believed that he was dealing with the judges in their official judicial roles.

Second, the claims against the justices concern their ruling on a motion to transfer. This ruling is "normally performed by . . . judge[s] in [their] capacity as . . . judicial officer[s]," as judges routinely rule on procedural motions during the course of litigation and have discretion to admonish or sanction counsel for their conduct. *Johnson v. Hanser*, 607 F.App'x 581, 583 (7th Cir. 2015).

Though Plaintiff argues that the justices willfully conducted themselves in a discriminatory matter, (Pl.'s Resp. Br. 7), whether or not the judges acted in bad faith or malice is not the relevant inquiry because judicial immunity applies even when the judicial actions "are alleged to have been done maliciously or corruptly." *Stump*, 435 U.S. at 355–56. Moreover, judicial immunity applies even to Title VI actions. *McKnight*, 669 F. Supp. 2d at 528; *Williams*, 637 F.App'x at 221.

Upon analysis of the Plaintiff's Complaint and the record, this Court finds that the parties engaged with the justices in their judicial capacities, in which the justices made a ruling within their discretion and judgment. Accordingly, the Defendant Justices of the Indiana Supreme Court

7

are entitled to absolute judicial immunity, and the Plaintiff's claims concerning actions taken by these justices are barred.

## 2. *The Court*

The Plaintiff also maintains the Indiana Supreme Court as a defendant entity in this case. The Seventh Circuit has held that judicial immunity attaches to the "act or omission" at issue, and not solely to the person. *Dawson*, 419 F.3d at 661; *Wilson v. Kelkhoff*, 86 F.3d 1438, 1445 (7th Cir. 1996). Accordingly, because the Plaintiff's allegation that he was improperly denied his petition to transfer is an extension of his claims against the Justices of the Indiana Supreme Court, this Court also dismisses the claim against the Indiana Supreme Court because judicial immunity extends to the Indiana Supreme Court as well.

## C. Abstention

In his Prayer for Relief, the Plaintiff also appears to seek declaratory and injunctive relief, asking the Court to "enjoin[] and temporarily restrain[]" the Defendants, direct the Defendants "to take such affirmative action as is necessary to ensure that the effects of" their alleged conduct is eliminated, and "[f]or appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of the Defendants." (Compl. p. 21 ¶¶ A, C.) In effect, the Plaintiff is seeking an injunction to reverse, amend, or otherwise enjoin the effects of the orders made by the Indiana Supreme Court in the state case. This Court holds that the issues presented by the Plaintiff pose considerations that make abstention appropriate under *Younger v. Harris*, 401 U.S. 37 (1971).

The basic principle of *Younger* abstention is that, absent extraordinary circumstances, a federal court should not interfere with pending state judicial proceedings. *Brunken v. Lance*, 807 F.2d 1325, 1330 (7th Cir. 1986). This principle, based on federalism and comity concerns,

particularly applies to civil proceedings when important state interests are involved. *Id.* (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626–28 (1986)); *Middlesex Cty. Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432 (1982). The Supreme Court has articulated three factors to aid in the determination of whether the *Younger* abstention doctrine applies in a civil proceeding. A court should consider whether: (1) there is "an ongoing state judicial proceeding"; (2) the "proceedings implicate important state interests"; and (3) "there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cty. Ethics Comm.*, 457 U.S. at 432.

Here, the parties have represented to the Court that the underlying state case is an ongoing judicial proceeding in the Indiana state court system, thus fulfilling the first part of the test. Second, this Court finds that Indiana has an important state interest in ensuring the integrity of its court proceedings, including ensuring that its own state courts interpret the state's rules and conduct proceedings without interference. "An important motivation for the Supreme Court's decision to abstain in *Younger* was the notion of comity: 'that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Hickey v. Duffy*, 827 F.2d 234, 245 (7th Cir. 1987) (citing *Younger*, 401 U.S. at 44).

After review of the Plaintiff's allegations in this case, the Court further finds that the Plaintiff's particular complaints implicate important Indiana state interests because the Plaintiff's allegations of racial bias stem from his dissatisfaction with applications of Indiana state law and procedure—the Plaintiff brought suit against the Defendants complaining of discovery disputes and party conduct, ultimately governed by Indiana's Rules of Trial Procedure. These are matters

9

of Indiana law and procedure that should be determined by state courts without interference. Accordingly, the Court abstains from acting as "a federal court instruct[ing] state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90 (1984).

Finally, the Seventh Circuit has "decline[d] to presume that the Indiana courts . . . will not discharge th[e] obligation" to protect a party's federal rights. *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th Cir. 1985). Though the Plaintiff's remaining claims implicate purported violations of the Plaintiff's federal rights by the Defendants other than those that are the subject of the state court suit, these remaining claims ask this Court for declaratory and injunctive relief to reverse or enjoin the Defendants' rulings.

However, there is no need for this relief because the Plaintiff has an adequate opportunity. *See Duff El v. U.S. Dep't of Agric. Rural Hous. Serv.*, No. 07-C-031-C, 2007 WL 5582066, at *1 (W.D. Wis. Jan. 31, 2007) (holding in a case in which the plaintiff sued the state court judge, "If petitioner believes that her rights are being violated in the context of the state proceedings, she may raise her claims before [the state court judge] or on appeal to the [state supreme court]"); *see also Younger* 401 U.S. at 45 ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). In other words, if the Plaintiff believes the state court rulings are *incorrect*, he has an adequate remedy of appellate review within the state court system. If the state court rulings are *correct*, though they may be predicated on race, the Plaintiff has prevailed and no longer has the requisite irreparable harm needed for relief. *See Straw v. Indiana Supreme Court*, No. 116-CV-03483 JMS TAB, 2017 WL 289958, at *1 (S.D. Ind. Jan. 23, 2017) (holding that the party seeking an injunction must show that "it has 'no adequate remedy at law and will suffer irreparable harm if

a preliminary injunction is denied.'") (quoting *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012)) (other citation omitted).

Accordingly, as in *Johnson v. Lopinot*, disposition of the state court action will resolve the Plaintiff's claims before this Court and thus, abstention by this Court is appropriate and necessitates dismissal of this action. No. 09-CV-1009-JPG, 2010 WL 4595669, at *4 (S.D. Ill. Nov. 4, 2010) ("Although a stay generally represents the extent of . . . abstention, dismissal is warranted here. Disposition of the state-court action will assuredly do away with all claims before this Court."); *see also Capital Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) ("[A] court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction."). The court in *Johnson* explained its rationale:

> If [the plaintiff's] direct appeal of her claim . . . proves successful, there will be no need for this case to continue. Meanwhile, if the [state appellate court] affirm[s the state court judge's] ruling and/or dismiss[es the plaintiff's] appeal, this action would essentially represent an impermissible collateral attack . . . . The Court trusts the appellate courts . . . to rule appropriately if entry of the amended judgment was truly incorrect as a matter of law. [The Plaintiff] has not argued to the contrary, and the Court will not attempt to do so for her.

*Id.* This rationale similarly applies in this case. Because the Plaintiff asks to enjoin pending state civil proceedings, which concern the important state interest of applying and enforcing the state's law through the state's own judiciary, and because the relief the Plaintiff seeks can be obtained in the state court system, *Younger* abstention is appropriate. *See Straw*, 2017 WL 289958, at *3 (citing *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) ("When confronted with circumstances that clearly implicate *Younger* concerns, a federal court must abstain.").)

## C. The Defendants' Remaining Arguments

Because the Court has determined that the Defendants are entitled to judicial immunity and the Court will not interfere with matters of state court proceedings, the Court declines to address the remainder of the arguments posited by the Defendants regarding the sufficiency of the Plaintiff's allegations, as these arguments are moot.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Motion to Dismiss of the Defendants [ECF No. 31]. Because the Plaintiff's Complaint is dismissed, the Court DENIES the Plaintiff's Motion for a Hearing [ECF No. 51]. The Plaintiff's Motion for Summary Judgment [ECF No. 62] is now MOOT. All Defendants having now been dismissed, the Clerk of Court is directed to close this case.

SO ORDERED on June 1, 2017.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT